We'll hear argument next in case number 22-2209 Federal Law Enforcement Officers Association versus the Attorney General of New Jersey. Mr. Chen. Good morning, your honors. May it please the court. David Chen on behalf of defendant appellants. If I may, I'd like to reserve three minutes of my time for Congress enacted LEOSA to ensure retired officers who are qualified to conceal carry in their own state can also do so across state lines. But plaintiffs... I didn't hear that part. Congress enacted LEOSA to ensure retired officers who are qualified to conceal carry in their own state can also do so across state lines. But plaintiffs want to read this reciprocity statute far more broadly to dictate how states regulate their retired officers carrying in their own territory. They read LEOSA to require New Jersey allow permitless carry without vetting so long as a retired officer has any photo ID indicating past employment, even one given as a courtesy decades ago for mundane purposes like discounts at local stores. LEOSA does no such thing. Whether viewed through a private right of action or preemption inquiry, LEOSA's text, purpose, and enforcement realities do not unambiguously require states to recognize courtesy cards. Nor does LEOSA contain the mandatory language and remedial structure to show unmistakable intent to create a private right and therefore this court should reverse. Let's talk a moment about LEOSA itself. Assume for a second that we think there's a private right of action because I want to focus in on what you were just starting with. If I'm following your argument, it ultimately is that there is a distinction between subsection D1 and subsection D2 and that allows the state to decide which of those two types of identifications it will accept and that not the officer himself. Is that essentially right? That's correct. I think that the evidence is in subsection D with the the word or which is in the disjunctive and which we think means that it allows a state to determine which type of ID to accept but you can find evidence that a state has discretion not to recognize courtesy IDs in other parts of the statute as well. So for example, in subsection C which defines the there's the mental health requirement under C5 and that says that a qualified officer is, sorry, a retired officer is not qualified if she is found to have a mental health disqualifier. In subsection C5, that's all about what happened between the officer and the agency with which the officer was employed previously. So the state doesn't have a part in that. Well, I think that in this New Jersey, the issuing state of New Jersey has authority over the local law enforcement agency. So within the state of New Jersey, states have different ways of structuring their executive branches and within New Jersey, because there has a somewhat unique structure in which that allows the Attorney General to issue policies that are binding on local law So, notwithstanding any provision of state law, officers may concealed carry if they satisfy subsection D. And you're saying that despite that notwithstanding prefiguratory clause, states get to decide which portion of subsections D to accept? So we certainly don't doubt that LEOSA has some preemptive effect over New Jersey's retired police officer scheme. I guess what I'm trying to get at is if the statute says states must accept D1 or D2, where do you get from the statute that states may decide to accept only D1 and choose not to accept D2? Well, I don't think that the statute says that states must accept D1 or D2. I think that the word or is somewhat ambiguous as to whether it is the individual officer that may decide or rather that is the state that has discretion. And I think provisions like the mental health requirement show that it must be the case that a state can decide, because it is specifically tied to the issues of D1 IDs. So if someone fails a it shows that a state can withhold D1 IDs if a retired officer fails a mental health exam. That provision would make no sense if LEOSA also required the state to recognize courtesy IDs under D2, which don't require any kind of mental health examination. And that would simply allow an officer to bypass that kind of identification. But you're forgetting that subsection C5 says you don't get that ID if you have that mental health, if those specific mental health conditions exist. Correct, but that is only specific to D1. So under C5 it says a retired officer is not qualified if they're found to have a mental health disqualifier and as a result will not be issued a D1 ID. Right, so okay, so they would get, you're saying that someone with a mental health condition covered by subsection C could get a D1 ID and could they also, I'm sorry, a D2A ID, could they also get a D2B certification? I believe so. So the D2B certification just simply is a kind of a firearms training certification. And so that doesn't necessarily include any kind of mental health screening or exam. And I think that in addition to sort of this C5 requirement, I think that the, it's important to remember sort of the illogical results that plaintiff's reading would actually lead to. Because I think plaintiffs state that essentially a state must recognize any card that on its face displays a photo of the holder and confirms past employment. But in D2B, the state gets to decide what the active duty standards for qualifications are. So the state could build in a mental health component. Is that correct? Yes, that's correct. The state could build in a mental health component. But I think just because the state can devise a workaround under the statute doesn't mean that it also forecloses the state from not recognizing these particular courtesy IDs. I mean, sure, if you read the notwithstanding language in A to be as limited as your cast of it, right? But if you read it and say, no, this is a preemption in favor of a nationally uniform standard, then it would make more sense, I think, to read it as Judge Freeman is suggesting. And that makes the two statutes work together. It does give the state some role, but it doesn't give it the opportunity to potentially circumvent Leosa's purposes. Well, I don't think you can read the Leosa as creating a national uniform standard. In fact, I think that plaintiffs even admit that that can't be the case. Both plaintiffs and the district court acknowledge that Leosa gives states complete discretion to determine what standards to set and how and when to issue Leosa IDs. And that's confirmed in cases like Cary and the Fourth Circuit. So it can't possibly be the case that Leosa is creating a national uniform standard. In fact, I think that the much better reading is that Leosa is essentially a reciprocity statute. So to, you know, to offer an illustrative example, if Congress had to recognize the driver's licenses of every other state, then if a 14-year-old from South Dakota had a driver's permit and they came into New Jersey, New Jersey would, of course, have to recognize that and allow them to drive. But that law says nothing about whether New Jersey can allow its own 14-year-old to drive. And so I think that is the purpose that Leosa was enacted for. And that was also recognized in cases like Cary and Henricks. But it certainly doesn't mean that New Jersey can't issue and regulate its own officers and vet its own officers to create and create its own permitting system. Your theory of New Jersey's ability to differentiate between its own retired officers and out-of-state retired officers is interstate commerce? I think that the reason the statute allows that differentiation is because in subsection D, the statute gives to the issuing state the discretion to determine which types of ID to recognize. And so, of course, if a officer comes from out-of-state and has an out-of-state ID, New Jersey doesn't have the discretion to determine whether that is valid for Leosa purposes because it is that issuing state that was the one to determine who is able to hire. Are you retreating from the position in your brief that interstate commerce is the basis for this distinction between in-state and out-of-state officers? Well, I don't, I'm not sure that that was the distinction within our brief, Your Honor. I think it's based upon sort of the, the distinction is based upon the text and structure giving discretion to officers, giving discretion to the issuing state and its officers. And I think it's also important, Your Honor, to sort of recognize the upshot of what plaintiff's interpretation would mean for enforcement on the ground. Because I think that with these courtesy IDs, it would put New Jersey law enforcement in a completely untenable position when they encounter courtesy IDs out in the field. Because there's no way to verify on the spot whether somebody meets all of the qualifications of, of, of Leosa. So, for example, there's no way to easily verify how long that person served before they retired, whether they have certain mental health disqualifiers, or whether they are otherwise barred under federal law. I got the, I got the impression that in New Jersey, retired law enforcement officers have a much more stringent requirement under state law to, after retirement, carry a weapon. So, I think under the RPO permit, there are required... I said stringent, but I think in some cases they simply are banned from carrying weapons. It's perhaps the only state in the country that imposes that requirement. Well, I think you're referring, Your Honor, to, right, the, the inability of retired officers who are 75 years or older to get a permit. But I don't think that, that requirement, even as plaintiffs in the district court recognize, it is, it is acceptable. Leosa allows that because it, because it allows individuals and states to define the criteria for issuing their own D1 or D2 IDs. And so, that's simply a criteria that New Jersey has, has decided is part of its, based upon its own sort of assessment of public safety, is part of its criteria for issuing IDs. I got the impression, perhaps you can correct me, but it's the only state in the country that imposes that, those kinds of stringent requirements. I'm not, well, I'm not aware of others in any other state that imposes that have other additional requirements besides just sort of the bare requirements under D1 and D2. And I think that a ruling that says that states must recognize courtesy IDs for their own officers would upend laws, not just in New Jersey, but in a number of other states, sort of including Tennessee, Wisconsin, that have specific requirements in addition to the ones that are in C5 and D. I see that my time is up, Your Honors. Thank you, Counsel. Thank you. May it please the Court, Nicholas C. Harbis on behalf of the plaintiff's counsel, my co-counsel, Michael Darby, with the permission of the Court, I will argue the preemption, Count 2, in this case, and Mr. Darby will argue the right under 1983 in Count 1. Simply put, Your Honors, LEOSA means what it says. The notwithstanding clause, as Judge Freeman pointed out, is clear. It has preemptive effect under the Supreme Court precedent, as well as the precedent of this circuit. Its plain language creates a right to carry by retired federal and state officers who are qualified under the statutory criteria under LEOSA and have a valid LEOSA ID. There is a concession of preemption here as to the federal retirees. In its April 2021 guidance, which was changed during the course of this litigation, the state concedes that federal retirees and out-of-state retired officers have a right to carry, but the state's gun laws exempt only those retirees officers from arrest if they have the state's unique RPO permit, and those federal officers who reside in New Jersey are subject to arrest under New Jersey law. And the same question we started with the state, excuse me, that's because there is a disjunctive clause in D1 and D2 that says or, and so the state argues, well, we don't have to accept the ID that you would prefer. We're able to craft a standard that we think is suitable for the public safety of the state. Why isn't that a natural reading of LEOSA? I, we don't believe it is consistent with the text of D1 and D2. First of all, the RPO permit is not a D1 identification because it's not issued by the employer. It's issued by the local agency. The D1 ID is issued by the local agencies. The RPO permit is issued by the superintendent of the state police, and it's conceded in this case that the federal plaintiffs are qualified. They have a valid LEOSA D2 ID that's undisputed, and the state concedes that they don't need an RPO permit. That, by that concession, the state agrees that New Jersey's gun laws are preempted as applied to the federal plaintiffs, and therefore the federal plaintiffs are entitled to affirmance of the district court judgment. Do you agree that the state could impose upon the local agencies requirements for the issuance of the D2A ID, and those requirements might include, for instance, the subsection C factors? The state, we agree, has some residual power with regard to identifications, but what the state cannot do is change the qualification requirements under subsection C of LEOSA, and that's what the state does in this case. So you're saying they shouldn't add additional requirements than what subsection C? That's correct, Your Honor. What they do is the federal requirements under LEOSA have no age limit. New Jersey adds an age limit, 75 years, to get an RPO permit. They say the federal law allows hollow point ammunition. The state says no hollow points. They state the federal law allows one time per year to qualify at the shooting range. The state says it must be done twice a year, and most importantly, the state's, the federal right is automatic. If you qualify, and if you have an identification under D1 or D2, you can carry wherever, in state or out of state. New Jersey's RPO permit is completely discretionary at the discretion of the superintendent of the state police, and the record reflects that two of the states had an RPO permit, even though they were qualified and they had the requisite identification. So in sum, we submit that the state's argument that the federal plaintiffs are not entitled to judgment is incorrect because the constitutional claim of conflict preemption is properly pled. The state never raised the issue previously in the district court by way of a motion to dismiss, which was withdrawn, that the claim was insufficient. And count two pleads constitutional conflict preemption. As the district court recognized, there's an actual controversy because the plaintiff, QRLEOs, with IOSA-compliant identification are threatened with prosecution for carrying a firearm in New Jersey. Even if, sorry, I'm just going to pause right there. The arrest and prosecution point, even if we were to agree with you on the preemption point, why would it be appropriate to enjoin the arrest and prosecution of these officers, given what New Jersey has said is the difficulty of determining whether they are, in fact, qualified under subsection C? How do you do that at the time of arrest is what I'm trying to get at. Necessarily, a lot of the issues in IOSA are determined at the time that they have a permit. They get the identification from their former employer. The former employer certifies that they were an officer, that they had the health or others. Some of the other requirements, such as the intoxication, are determined at the scene. So if an officer is stopped and he's drunk and exhibits, just like any other drunken driving arrest, he can be arrested because he cannot carry if he's intoxicated. But the D to A identification only requires proof that you separated from the service and that you were previously a law enforcement officer. It doesn't actually say that you separated in good standing, or that's not a requirement for the issuance of that ID, right? So there are other provisions, besides the intoxication piece, that don't have to be verified by the agency before the issuance of that ID. And there's nothing to say that the state can't do some vetting. But what the state cannot do is change the qualification requirements in federal law. And that's what they do. And this case was not litigated by virtue of the whole courtesy ID issue that the state complains about. That was never raised on the merits in the district court briefing. It only came about in the motions for a stay. Is it your position, though, counsel, that people who claim to be qualified retired law enforcement officers can be pulled over, present their identification and their firearm certification under D2, and the officer who conducts the stop has to believe that and not arrest them, notwithstanding having not been able to verify that they separated in good standing, for instance, from their previous employer? Yes, I would submit to the court that that's what Congress expected. Once the officer has a D2 identification and presents that to the officer, they should not be arrested. And in fact, that was what happened in the case that we submitted to the court, the state versus Johnson case. A federal officer was arrested for possessing a firearm, had the proper identification. They were indicted. They went through a jury trial. And ultimately, the appellate division of the New Jersey Supreme Court, appellate division of the New Jersey courts, agreed that the federal statute preempts the enforcement of the state guns law. But even notwithstanding preemption, what is the purpose of listing these qualifications, including, for instance, separation in good standing, if there's never an opportunity for law enforcement to verify that? We're not saying that the state can't issue a D2 identification without some verification procedure. The answer for the state is to go change its infirm law because the law is constitutionally deficient, because it conflicts directly with the federal standards. If they want to go and enact a new RPO statute that says, well, you have you have to be vetted, they probably have some residual power to do that. But what they can't do is change the qualification standards. And that's the problem with their statute, which they refuse to recognize. I see I'm done. If you want to hear from Mr. Darby, you're on. Let me follow up on one last question. Is there anything in Leosa's language to suggest that New Jersey may treat its own retired officers less favorably than out-of-state officers? No, Leosa does not distinguish between federal... I got the impression that that happens, but you're saying no. New Jersey treats everybody the same way. All retired officers are treated the same way. Well, not now, because they enacted a new policy which says federal officers don't have to get an RPO permit. Only in-state officers have to get the RPO permit. And we can apply the RPO permit law to deny it to officers who have, like Mr. Litwin, who was, we submitted the affidavit. He was over 75 years old and he continued his qualifications. But New Jersey says even if he can shoot straight, we're not going to give him a permit, but federal law allows that. And that's the rub here. Federal law says, okay, if you qualify and meet all the qualifications, federal qualifications, you can indeed carry a gun. Correct. And Leosa's statute in and of itself doesn't distinguish between federal and state officers. It says any officer who meets the qualification standards and can get an ID is allowed to carry at their discretion. Thank you, Your Honor. May it please the court. Michael Darby from Blank Room, also appearing on behalf of plaintiff appellees. Your Honor, the district court order granting summary judgment for the plaintiffs on their 1983 claim should be affirmed. The issue on that point is what did Congress intend in passing Leosa? Did it intend to create a privately enforceable right under section 1983? And here that boils down to this question, whether Congress intended for individuals who have this entitlement to carry a concealed firearm under a federal statute, if they are a QRLEO, and if they have Leosa compliant identification, whether the denial of that right should be enforceable under section 1983, and we submit that it should. And that's what the district court found. And the answer is found in the text of the statute. You know, again, it's a statute that's built, if you do A and if you do B, then you may do C. And it's different from all the statutes and all the cases that the state cited in its briefs. It's unusually clear in that it says, if you do these two things, then you may carry. And I want to pick up on a point that Judge Freeman was asking about in terms of the practical enforcement difficulties, we'll call it, because it was something the state understands our position on it, is that under section 1983, the test that the Supreme Court has told us from Blessing and has told us from Gonzaga University and all that line of cases, is that once you find an enforceable right under section 1983, the only way Congress forecloses that right is either expressly by saying, we don't want 1983 to apply, or impliedly by saying, we have something else that we had in mind and we want you to follow these procedures and have these very specific remedies. Aside from one of those two findings, 1983 is the backdrop against which Congress legislates. So the practical enforcement difficulties in the field is sort of a non-issue under the 1983 analysis. It's a different inquiry that I think my colleague has addressed, but under section 1983, it's not, doesn't factor into the analysis. Why should we conclude that there's an affirmative right to carry, that is, that Congress gave in Leosa, as opposed to just an immunity from prosecution? Right, Judge Freeman. So the, again, the issue with finding that Leosa is only immunity from prosecution is illustrated in the Johnson case that we cited for the court, which is somebody who has a positive right, federal law says you may do this, and then they can go and get arrested and be in criminal limbo for, in the Johnson case, it was, there was a five-year sentence, and only after three years did the appellate division step in and say, we reverse and vacate. Congress did something different with Leosa, though. It said we, you know, again, it was passed in the wake of 9-11. It changed a lot about how the country, you know, handled national defense and that sort of thing. And Congress was looking at these issues and also looking at some of the law enforcement officers were dealing with conflicting regulations from place to place. And the point was, Congress said, we want to make it easy. We want to make it standard across the country so there's no confusion that if you have a D1ID or a D2ID and you meet these characteristic qualifications under Subsection C, then you may carry. By doing that, they wanted to eliminate the confusion and eliminate the ability of somebody just to be arrested. And again, it's a positive right saying you can go out and do this. We're saying it's OK. So what do you make of the difference between Section 926A, which says shall be entitled to do a certain thing, and the provision at issue here, which says may? Thank you, Judge Freeman. So it's, I think going back to blessing, there's no categorical rule about may versus shall versus must versus any of these, you know, different turns of phrase in particular. What blessing tells us to do is to look at the statute in its own right. I think 926A is different because it was, well, A, it was passed 25 years before Leosa was passed. B is that it doesn't require on the spot documentation the way Leosa does. You know, Leosa says if you're a QRLEO and you have this Subsection D identification, then you may carry. So you know, during a field encounter, there is something to provide to the officer making the stop. You can say I have D2 credentials. You can call my commanding officer from the agency from which I retired to vet my qualifications. Well, that would only vet that the person was actually previously employed, but they wouldn't be able to go through all the Subsection C factors with the previous employer. Well, I think they may be able to. I think they're all historical. And it's just a matter of making a phone call, possibly, and saying, you know, did this individual work for you? How long did they retire in good standing, etc.? And you tick off all the factors under Subsection C. And then it just reduces to a routine traffic stop where, you know, you're, I think it's C6, your stopping officer would investigate whether there's any intoxication and, you know, a database check for Subsection C7, which is, is there a federal disqualifier? So again, I think there are demonstrable ways to prove the affirmative right in the field that aren't present in Subsection 926A. And again, 926A, and there's some discussion of this in the briefs and in this court's decision in the ANJRPC case. 926A, well, first of all, this court also found that there was a positive entitlement in 926A. It just found that it was the wrong plaintiff to sue. I don't think that there's a clear statement from that case that 926A is just an affirmative defense. So that's, that's what I would say to that point, Judge Friedman. And then, Your Honors, if I'd like to just address the State's argument about the courtesy identifications as well. So, thank you. So again, I just want to focus on the text of the statute, which, which it does have this or clause. It does say that you may carry a concealed firearm if you have identification that meets Subsection D. Subsection D is definitional. It says an identification is either of these two things. And if you take a look at the identifications in the record and you put it next to the text of LEOSA, the D2 identifications in the record do exactly what Congress said they have to do. So I see I'm out of time. I appreciate the opportunity to speak to the court today. Thank you, counsel. Thank you. Thank you, Your Honors. I'd like to just make three quick points. And to begin, I'd like to jump in on this conversation with Judge Friedman about the enforcement realities, what it would mean under plaintiff's reading. So as, as I've emphasized before, I think this would put law enforcement officers in an untenable position to be able to verify the C, Subsection C factors when they encounter a retired officer with a courtesy ID that only says that this person has been working, has previously worked at a law enforcement agency. I heard opposing counsel said this is just based upon the subsection C factors are historical facts, and this will be a routine traffic stop. But I don't think that that's correct at all. When somebody is pulled over, there's no way through a courtesy ID to know if that person retired in good standing, whether they have other mental health disabilities, or if they're otherwise disqualified from carrying a firearm under federal law. I mean, that is a legal determination. And there are many different disqualifiers under federal law that I think a law enforcement officer on the spot couldn't actually, couldn't actually make. Those are different from other IDs that could be issued. I'm just sort of wondering how that differs if someone had a firearms ID card, and this wasn't a traffic stop, but it was a response at house. And wouldn't, wouldn't, wouldn't the responding officers have the same difficulty of not knowing whether that person is presently disqualified from some other occurrence, but still in possession of documentation? Well, so under New Jersey's RPO license, in order to get that license, that individual needs to go through a number of background checks and vetting to show that that person is qualified. So when somebody... I mentioned a non, in the non-RPO setting, if someone, if officers were responding to a call at home, and the individual had a firearm, and the firearms ID card that New Jersey had issued, at that moment, the officers don't know whether that person is otherwise disqualified by recent event, the same hypothetical you're giving for the traffic stop. I'm assuming there's some process that they use in that instance, and why wouldn't they follow something similar here? Well, sure, in that exact moment, there may have been some disqualifier that just came up, you know, a day before that they couldn't necessarily verify. But I think that there are, it is, at least that officer can be assured that they, that person has gone through some type of vetting beforehand. And even if you think that there are, sort of, enforcement difficulties, that's actually a reason to side with the state here, because it is because of these enforcement difficulties that means that individuals shouldn't be allowed to have a private right of action, in order to hold an officer who perhaps makes a mistake in their determination in the field, liable for that, for that mistake. I mean, I think there are things that are competent for a court to decide, perhaps as an affirmative defense, if somebody is asserting that as defense to prosecution, or for an agency to vet beforehand, but certainly not for an officer in the field. I see that my time is up. I wanted to just put one additional thing to you. Some states impose extra requirements when it comes to LEOSA, but if an officer complies, essentially, with displace state laws that impose additional requirements? Well, Your Honor, I think that, I think, no, Your Honor. If those conditions, those additional conditions are, sort of, conditions for the issuance of a LEOSA ID, then both the district court and plaintiffs have very much conceded that that is possible. It could be any number of things. It could be any differences in the age of the officer, for example. Right. Well, and I think both the plaintiff and the district court have acknowledged that, no, the state can choose not to issue any LEOSA ID whatsoever, and that would still be consistent with LEOSA. And so if it can do that, then it certainly has the discretion to impose. There's no specific requirement for the issuance of an ID? Correct, Your Honor. Correct. All right. Thank you, counsel. Thank you, Your Honors. We thank counsel for their arguments, and we will take the matter under